IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DEROISE J. WASHINGTON, Dr.;

Plaintiff,

vs.

MICHAEL MYERS, Director; DAVENPORT, Lieutenant; PENNELL, Lieutenant; W. SHEARON, Lieutenant; STUKES, Sargent, Individual and Official; BASS, Sargent, Individual and Official; MURPHY, Correctional Officer; FUHLRODT, Correctional Officer, Official; STEPHANS, C.O. II, Official; CARLOS CABASSA-HERNANDEZ, Inmate of Douglas County Correctional Center; and EMILY, Medical Employee for the Douglas County Correctional Center, Individual and Official Capacity;

Defendants.

8:25CV1

MEMORANUDM AND ORDER

This matter is before this Court to perform its initial review pursuant to 28 U.S.C. § 1915(e) and §1915A of a Complaint, Filing No. 1, and supplement, Filing No. 6 (collectively the "Complaint"), filed by Plaintiff Dr. Deroise J. Washington ("Plaintiff"), an inmate proceeding in forma pauperis, to determine whether the Complaint is subject to summary dismissal. For the reasons set forth below, the Court finds that it is, but in lieu of dismissal this Court shall sua sponte grant Plaintiff leave to amend in compliance with this Memorandum and Order.

**I. SUMMARY OF AMENDED COMPLAINT**

Plaintiff brings suit under 42 U.S.C. § 1983, alleging Eighth Amendment violations, which this Court construes as Fourteenth Amendment failure to protect and denial of

medical care claims against Michael Myers ("Myers"), Director of the Douglas County Corrections ("DCC") and several DCC employees—Sergeants Stuke ("Stuke") and Bass ("Bass"); Lieutenants Davenport ("Davenport"), Pennell ("Pennell"), and W. Shearon ("Shearon"); Emily, a medical employee with DCC ("Emily"); and correctional officers Murphy ("Murphy"), Fuhlrodt ("Fuhlrodt"), and C.O. II Stephans ("Stephans"). All of the DCC defendants are sued in their individual and official capacities, with the exception of Fuhlrodt and Stephans who are sued in their official capacities only. Plaintiff also brings claims against Carlos Cabassa-Hernandez ("Cabassa-Hernandez"), an inmate at DCC, in an unstated capacity. Filing No. 1 at 2-5.

Specifically, Plaintiff alleges that on August 29, 2024, while being held as a pretrial detainee at DCC, he was told by DCC staff that Cabassa-Hernandez was being temporarily held in Plaintiff's cell until other arrangements were made. Id. at 7-8. However, Cabassa-Hernandez was not removed, and at some point that day Murphy called Stukes to ask why Cabassa-Hernandez was still in Plaintiff's cell to which Stukes replied "because I said so." Id. at 8. Around 9:30 that evening officer King ordered Plaintiff to return to his cell where Plaintiff discovered Cabassa-Hernandez had eaten his commissary items and was wearing Plaintiff's orthopedic boot Plaintiff needed for his previously broken foot. Id. Upon entering his cell, Plaintiff alleges Cabassa-Hernandez restrained him with Plaintiff's own walker and slammed Plaintiff into the cell door, causing further injury to his broken foot including pain and noticeable swelling. Id. While Officers King and Murphy wrote an incident report about Cabassa-Hernandez's behavior and Plaintiff submits inmates Michael Williams and now former-inmate Treshawn Abrams

2

were witnesses to "various stages" of the events at issue in the Complaint, no medical attention was offered by staff. *Id.*

The following day on August 30, 2024, Plaintiff alleges that he requested ice for the swelling in his foot, and, on August 31, 2024, he advised the Mental Health Department of the assault, requested additional medication to maintain balance, and informed them that his PTSD was exacerbated by the August 29 incident. *Id.* at 9.

On September 21, 2024, Plaintiff filed a grievance explaining that he still needed Tylenol for his foot pain. *Id.* But, he contends that on October 16, 2024, HSA R. Swearinger informed him there was nothing further the medical department could do, after which Plaintiff filed a second grievance. Filing No. 1 at 9; Filing No. 6 at 1.

Between November 15 and 21st, an x-ray of his foot was taken, after which on November 28, 2024, Plaintiff alleges he was informed by RN Thomas that a fracture was seen in the x-ray and he referred Plaintiff to an orthopedic surgeon. Filing No. 6 at 1. Then on December 6, 2024, Plaintiff alleges that APRN Danelle Goltz informed him that it appeared the assault had aggravated his foot injury and had caused obvious nerve damage. He submits that he was given a low dose of Duloxetine for the nerve pain but it is insufficient and he remains in pain. *Id.*

Plaintiff contends that on December 4, 2024, Cabassa-Hernandez was brought back to his housing unit, causing additional exacerbation of his PTSD. *Id.* at 2.

Plaintiff further alleges that, as of the date his Complaint was filed, he has not received any treatment for his PTSD or his anxiety relating to the assault. *Id.* at 1.

3

As injury Plaintiff alleges swelling, pain, nerve damage, a possible refracture of his broken foot, as well as PTSD and anxiety. Filing No. 1 at 7 , 9. As relief Plaintiff seeks release and monetary damages. Filing No. 1 at 7; Filing No. 6 at 3.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. See 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

## III. DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). As Plaintiff brings this suit pursuant to 42 U.S.C. § 1983, all of Plaintiff's claims and relief sought in the Complaint shall be reviewed to determine if this standard is met.

A. **Unavailable Claims and Relief**

Plaintiff names inmate Cabassa-Hernandez as a Defendant in his 42 U.S.C. § 1983 Complaint. Filing No. 1 at 5. Plaintiff also seeks release from incarceration as part of the relief sought. Filing No. 6 at 3. For the reasons that follow Plaintiff's §1983 suit against Cabassa-Hernandez cannot proceed and release from incarceration is not available as relief.

Only state actors may be held liable under section 1983. *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49. "[A]n inmate's attack on another inmate cannot be attributed to the state in order to qualify the attacker as a state actor." *Hudson v. Kintock Grp.*, No. CIV. 12-4728 JBS, 2013 WL 6230268, at *3 (D.N.J. Dec. 2, 2013) (citing *Davis v. Cumberland Cty. Dep't of Corr.*, 2013 WL 5503665 (D.N.J. Oct. 2, 2013) (finding that inmates did not act under color of state law in attack of plaintiff) (citing *Ketchum v. County of Alameda*, 811 F.2d 1243 (9th Cir.1987); *Miller v. Twomey*, 479 F.2d 701 (7th Cir.1973) (since the assaulting inmate was not granted authority enabling him to harm plaintiff, the assault did not qualify as a state action; it was a common law tort, not a violation of § 1983); *Curry v. Lundy*, 314 F.Supp. 344 (E.D.Pa.1970) (claims that two other inmates conspired to destroy the plaintiff's property must be dismissed for failure to meet the color of law requirement); *Simmons v. Maslysnky*, 45 F.R.D. 127 (E.D.Pa.1968) (claims that plaintiff was stabbed by another prisoner after prison officials housed the attacker where he could injure plaintiff, were

dismissed for failure to meet the color of law requirement))). As Cabassa-Hernandez was not acting under color of law, he must be dismissed from this suit.

Forms of relief that call into question the validity of a conviction and/or sentence as well as release from incarceration are also not available under § 1983, and instead are appropriate in a habeas proceeding. See *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994); *see also Robinson v. Carson*, No. 8:23CV137, 2023 WL 3478625, at *1 (D. Neb. May 16, 2023) (citing *Smith v. Cann*, No. 1:21-CV-115 SNLJ, 2021 WL 5232385, at *4 (E.D. Mo. Nov. 10, 2021), *aff'd*, No. 21-3855, 2022 WL 2116051 (8th Cir. Feb. 28, 2022) ("[T]o the extent that Plaintiff seeks release from confinement or correction of his state court sentence in this matter, such relief is not available in a civil action brought under 42 U.S.C. § 1983. Allegations seeking such relief fail to state a valid § 1983 claim.")). Therefore, to the extent Plaintiff filed this action to secure his release from incarceration, such relief is not available to him under § 1983.

**B. Official Capacity Claims under 42 U.S.C. § 1983**

Plaintiff brings suit against all remaining Defendants in their official capacities as employees of DCC. Where claims are made against defendants in their official capacities, such claims are construed as filed against the officers' employing entity, which here is Douglas County. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); *Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity. A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity." (citation omitted)).

A county may only be liable under section 1983 if its "policy" or "custom" caused a violation of a plaintiff's constitutional rights. *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A plaintiff "must allege facts which would support the existence of an unconstitutional policy or custom." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). Dismissal is proper when a complaint does not contain any "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom . . . ." *Id.*

Here, Plaintiff does not allege that any policy or custom of Douglas County caused his injuries. As such, Plaintiff failed to allege a plausible claim for relief under 42 U.S.C. § 1983 against any defendant in their official capacity, and his official capacity claims against all remaining defendants shall be dismissed. The Court also notes that without amendment, as Plaintiff sued Defendants Fuhlrodt and Stephans in their official capacities only, without amending his Complaint with facts supporting a policy and/or custom of Douglas County and/or alleging claims against Fuhlrodt and Stephans in their individual capacities, Defendants Fuhlrodt and Stephans shall be dismissed from this action.

However, for the reasons that follow, any claims against Fuhlrodt and Stephans, as well as all remaining Defendants, must be further amended, or the Complaint is subject to dismissal in its entirety.

**C. Individual Capacity Claims**

Plaintiff brings claims against Defendants Myers, Stukes, Bass, Davenport, Pennell, Shearon and Emily in their individual capacities. He alleges what this Court construes as claims for failure to protect and deliberate indifference to medical needs, which Plaintiff alleges arise under the Eighth Amendment. Filing No. 1 at 3. However, as Plaintiff was a pretrial detainee at the time of the events at issue, *see id.* at 6, the Eighth Amendment does not apply and instead his failure to protect claim must be analyzed under the Fourteenth Amendment as set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979). *Stearns v. Inmate Servs. Corp., et al.*, 957 F.3d 902 (8th Cir. 2020). "The Constitution affords greater protection to a pretrial detainee compared to a convicted inmate in the sense that '[d]ue process requires that a pretrial detainee not be punished.'" *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (quoting *Bell*, 441 U.S. at 535 n.16). But the Fourteenth Amendment provides detainees "at least the same level of constitutional protection as the Eighth Amendment," *Nelson v. Shuffman*, 603 F.3d 439, 446 n.3 (8th Cir. 2010), therefore it is appropriate to consider Eighth Amendment protections when analyzing Plaintiff's claim.

It is well established that the Eighth Amendment "requires prison officials to 'take reasonable measures to guarantee' inmate safety by protecting them from attacks by other prisoners." *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "Prison officials act unreasonably—thereby violating the Eighth Amendment—when they are deliberately indifferent to a 'substantial risk of serious harm.'" *Nelson*, 603 F.3d at 446 (quotation marks and citations omitted). To prove deliberate indifference, an inmate must make two showings: "The first requirement tests

whether, viewed objectively, the deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a 'sufficiently culpable state of mind.'" *Irving v. Dormire*, 519 F.3d at 446 (quoting *Farmer*, 511 U.S. at 834) (internal citation omitted). The deprivation is "'objectively, sufficiently serious,' [under the first requirement when] the official's failure to protect resulted in the inmate being 'incarcerated under conditions posing a substantial risk of serious harm.'" *Young*, 508 F.3d at 872 (quoting *Farmer*, 511 U.S. at 834). "An official is deliberately indifferent [under the second requirement] if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Id.* at 873 (citing *Farmer*, 511 U.S. at 844-45).

As a pretrial detainee, Plaintiff's right to medical care arises under the Due Process Clause of the Fourteenth Amendment, but courts apply the deliberate-indifference standard that governs claims brought by convicted inmates under the Eighth Amendment. *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) (citations omitted). The standard for such a claim is as follows, as described by the Eighth Circuit in *Jackson*:

> Whether an official was deliberately indifferent requires both an objective and a subjective analysis. Under the objective prong, [a plaintiff] must establish that he suffered from an objectively serious medical need. To be objectively serious, a medical need must have been diagnosed by a physician as requiring treatment or must be so obvious that even a layperson would easily recognize the necessity for a doctor's attention. Under the subjective prong, [a plaintiff] must show that an official actually knew of but deliberately disregarded his serious medical need. This showing requires a mental state akin to criminal recklessness. Consequently, [a plaintiff] must show more than negligence, more even than gross negligence to evince deliberate indifference. Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference. An inmate must demonstrate that a prison doctor's actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care.

*Id.* (internal citations and quotations omitted).

Here, Plaintiff's Complaint does not contain any allegations which would allow this Court to determine which of the remaining Defendants were connected to the claims alleged, rendering his entire Compliant subject to dismissal if not amended. Federal Rule of Civil Procedure 8 requires that every complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each allegation . . . be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). A complaint must state enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (quoting *Twombly,* 550 U.S. at 555).

As pleaded, Plaintiff's Complaint fails to meet this minimal pleading standard. For example, in relation to his medical care claim, Plaintiff alleges "staff" failed to offer him medical attention after the August 29 incident, but the Court is unable to ascertain any connection between that general allegation and which Defendant or Defendants were involved. Plaintiff fails to connect any Defendants to any of the allegations regarding his failure to protect claim and fails to state what Defendants were aware of the August 29 assault, aside from his sole allegation that Stukes continued to house Plaintiff with Cabassa-Hernandez after the assault incident.[1] Plaintiff's Complaint contains no allegations that any of the Defendants knew or should have known of the potential harm to Plaintiff by housing Cabassa-Hernandez with him nor do any allegations connect any of the Defendants specifically to his failure to protect claim. In fact, aside from naming Murphy, Fuhlrodt, Stephans, Myers, Bass, Davenport, Pennell, Shearon, and Emily as

---

[1] While Plaintiff also contends that Murphy wrote up a report of the incident there is no indication Plaintiff alleges any wrongdoing on Murphy's part in so doing. *See* Filing No. 1 at 8.

defendants, his Complaint never mentions them or connects them in any way to the harms alleged.

To reiterate, the Court is unable to determine which of the named Defendants were involved in any of Plaintiff's claims because Plaintiff does not connect the alleged violations with specific Defendants. As such, on the Court's own motion, Plaintiff shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sufficiently describes his claims against each of the Defendants. *Plaintiff should be mindful to clearly explain why each of the Defendants meet the required "color of law" standard, as well as what each Defendant did to him, when each Defendant did it, how each Defendant's actions harmed him, and what specific legal rights Plaintiff believes each Defendant violated. Put another way, the Court cannot guess as to what each Defendant did and when; therefore, Plaintiff should set forth factual allegations that establish when and how each Defendant was involved with Plaintiff, and what claims Plaintiff alleges against each of them.*

If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, his claims against all Defendants will be dismissed without prejudice and without further notice. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) after he addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED that:

1. All claims against defendant Cabassa-Hernandez are dismissed without prejudice.

2. Plaintiff shall have until **September 24, 2025**, to file an amended complaint addressing the remaining claims and any other claims Plaintiff may seek to raise.

3. If Plaintiff decides to proceed and file an amended complaint he must: Clearly state a claim or claims upon which relief may be granted against any and all named defendants in accordance with this Memorandum and Order. **Plaintiff is warned that an amended complaint will supersede, not supplement, the previously filed Complaint. Plaintiff must include all of the claims he wishes to pursue against all individuals he has named or will <u>name</u> as defendants that he wishes to proceed against in his amended complaint. Further, Plaintiff should be mindful to explain in his amended complaint what each defendant did to him, when and where the defendant did it, and how each defendant's actions harmed him.**

4. If Plaintiff fails to file an amended complaint or otherwise respond to this order, Plaintiff's claims against the remaining Defendants will be dismissed without prejudice and without further notice.

5. To the extent Plaintiff requires additional time to comply with this Memorandum and Order, he must seek an extension via filing a written motion on or before the September 24, 2025, deadline for compliance.

6. The Clerk of the Court is directed to send Plaintiff the Form Pro Se 14 ("Complaint for Violation of Civil Rights (Prisoner)").

7. The Clerk's Office is further directed to set a pro se case management deadline in this case using the following text: **September 24, 2025:** Check for amended complaint.

Dated this 25th day of August, 2025.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge